**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mahin M. Bakhtiari, | NO. CIV-05-1754-PHX-DGC |
| Plaintiff, | **ORDER** |
| vs. | |
| Jo Anne B. Barnhart, Commissioner of the Social Security Administration, | |
| Defendant. | |

Pending before the Court are Plaintiff's motion for summary judgment, Defendant's cross-motion for summary judgment, and Plaintiff's motion to amend complaint. Docs. ##8, 16, 29. The parties have filed responses to the motions and corresponding statements of facts. Docs. ## 15-16, 22, 31. For the reasons set forth below, the Court will grant Plaintiff's motion for summary judgment, deny Defendant's cross-motion for summary judgment, and grant Plaintiff's motion to amend complaint.

**I.    Background.**

Plaintiff applied for disability insurance benefits and supplemental security income on March 27, 2003, claiming a disability onset date of January 30, 2003. Tr. 108-110. The application was subsequently amended to reflect an onset date of March 1, 2003. Tr. 26. The applications were denied initially and on reconsideration. Tr. 88, 95. A hearing before an Administrative Law Judge ("ALJ") was held on December 28, 2004. Tr. 40-85. The ALJ

1  issued a written decision on January 13, 2005, finding that Plaintiff was not disabled within
2  the meaning of the Social Security Act. Tr. 23-36. This decision became final when the
3  Appeals Council denied Plaintiff's request for review on May 18, 2005. Tr. 7. Plaintiff then
4  commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). Doc. #1.

5  **II.    Standard of Review.**

6  Defendant's decision to deny benefits will be vacated "only if not supported by
7  substantial evidence or based on legal error." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th
8  Cir. 1989). Substantial evidence is more than a mere scintilla, but less than a preponderance.
9  *Reddick v. Charter*, 157 F.3d 715, 720 (9th Cir. 1998). In determining whether the decision
10 is supported by substantial evidence, the Court must consider the record as a whole, weighing
11 both the evidence that supports the decision and the evidence that detracts from it. *Id.*

12 **III.   Analysis.**

13 The ALJ found that Plaintiff had the following severe impairments: status post left
14 macular hole repair with left eye blindness, and a history of headaches. Tr. 28, 35 ¶ 3. The
15 ALJ concluded that these impairments were not severe enough to meet or medically equal
16 a listed impairment. Tr. 28, 35 ¶ 4. The ALJ further concluded that even though Plaintiff
17 lacked the residual functional capacity ("RFC") to perform her past work, she could still
18 perform work at all exertional levels and therefore was not disabled as defined by the Social
19 Security Act. Tr. 34, 35 ¶ 7, 35 ¶ 11, 36 ¶12, 36 ¶ 13. The ALJ also found that Plaintiff was
20 precluded from reading fine print, climbing ladders, ropes and scaffolds, exposure to hazards
21 including moving machinery and unprotected heights, and should avoid tasks which require
22 the use of left depth perception or use of visual acuity beyond six feet.

23 Plaintiff argues that the ALJ erred by improperly discrediting the opinions of treating
24 physicians, discounting Plaintiff's testimony regarding her inability to work, and basing the
25 RFC on the opinion of a non-treating, non-examining physician. Doc. #10 at 9-15. Plaintiff
26 further argues that the ALJ erred because he did not consider the combination of the effects
27 of all impairments, did not properly address evidence of deterioration of right eye vision and
28 depression, and improperly based his denial of benefits on the Medical-Vocational Rules

1  contained in the Social Security Regulations.  Doc. #10 at 4-8.  Defendant contends that the
2  ALJ did not err and that his decision is supported by substantial evidence.  Doc. #17 at 2-12.
3       **A.    Did the ALJ Err by Rejecting the Opinions of Treating Physicians?**
4            **1.    J. Shepard Bryan, M.D.**

5  Dr. Bryan is a physician at Associated Retina Consultants and performed Plaintiff's
6  left macular hole repair.  Dr. Bryan first saw Plaintiff for progressive vision loss on
7  February 20, 2003, after she was referred to him by ophthalmologist Dr. Thomas McPhee.
8  Dr. Bryan noted the existence of a macular hole in the left eye and visual acuity of 20/40 in
9  the right eye.  Tr. 200.  Dr. Bryan also reported that Plaintiff suffered from migraines.  *Id.*
10 Surgery to repair the hole was performed on March 13, 2003, and Plaintiff was taken off
11 work for two weeks.  Tr. 198-199, 257.  On April 3, 2003, Plaintiff complained of an
12 increase in the number of migraine headaches since the surgery.  Tr. 214.  Dr. Bryan ordered
13 Plaintiff to remain off work indefinitely "due to limited sight."  Tr. 256.  Dr. Bryan treated
14 Plaintiff on May 1, June 5, July 23, and August 21, 2003, for her continuing migraines and
15 decreased visual acuity.  Tr. 204, 206, 208, 210.  On August 14, 2003, Dr. Bryan stated that
16 the combination of Plaintiff's decreased visual acuity in her right eye post surgery and the
17 legally blind status of her left eye left her unable to work or drive.  Tr. 196.  Dr. Bryan also
18 stated that Plaintiff's migraines were incapacitating, leaving her "totally disabled."  *Id.*

19 The ALJ rejected Dr. Bryan's opinion regarding Plaintiff's disability for two reasons.
20 First, the opinion was rejected because "the doctor relied upon the claimant's subjective
21 report of symptoms and limitations provided by the claimant, and seemed to uncritically
22 accept as true most, if not all, of what the claimant reported."  The ALJ states "[a]s described
23 elsewhere in this decision, there exist good reasons for questioning the reliability of the
24 claimant's subjective complaints."  Tr. 33.  Second, the ALJ rejected Dr. Bryan's opinion
25 because it was unclear if the doctor knew the definition of "disability" as defined by the
26 Social Security Act and Regulations, and it was possible the doctor was referring only to the
27 Plaintiff's inability to conduct her past work.  *Id.*
28 / / /

### a. Plaintiff's Credibility

Since the rejection of Dr. Bryan's testimony derived from the ALJ's finding that Plaintiff's complaints were suspect, the Court will address the credibility issue first. The Ninth Circuit cases are unclear on the standard the ALJ must meet when discrediting a plaintiff's pain testimony. Some cases indicate that the ALJ must set forth "clear and convincing" reasons. *See, e.g., Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Regennitter v. Comm'r of the Soc. Sec. Admin.*, 166 F.3d 1294, 1296 (9th Cir. 1999); *Reddick*, 157 F.3d at 722. Others suggest that the ALJ must only set forth specific and legitimate reasons based on substantial evidence. *See, e.g., Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999); *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998); *Chavez v. Dep't of Health and Human Services*, 103 F.3d 849, 853 (9th Cir. 1996). At a minimum, then, the ALJ must set out specific and legitimate reasons supported by substantial evidence for discrediting a plaintiff's pain testimony. *Fair v. Bowen*, 885 F.2d 597, 601-02 (9th Cir. 1989). *See also Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) ("So long as the adjudicator makes specific findings that are supported by the record, the adjudicator may discredit the claimant's allegations based on inconsistencies in the testimony or on relevant character evidence.").

The ALJ gives several reasons for finding that Plaintiff lacks credibility. The Court will address each.

First, the ALJ states that Plaintiff's inconsistent reports of medical problems "at least raise[] the question whether the claimant has exaggerated her symptoms for the purpose of obtaining benefits." Tr. 31. For example, the ALJ states that Plaintiff's complaints of increased headaches are inconsistent, and therefore reflect poor credibility. *Id.* The ALJ also takes issue with Plaintiff's reported weight gain of 18 pounds on March 11, 2002, and reported weight loss of 20-22 pounds on August 21, 2003. *Id.* Last, the ALJ finds Plaintiff's report of severe side effects from her medications on September 9, 2003, inconsistent, stating that "medical records do not corroborate those allegations" and that Plaintiff's treating physician, Dr. Patel, reported no side effects on February 14, 2004. Tr. 31, 248.

1    Plaintiff argues that the ALJ failed to explain why an increase in the number and
2 intensity of Plaintiff's migraines post surgery is inconsistent or reflects poor credibility.
3 Doc. #22.  Specifically, Plaintiff argues that these reports are indicative of her change in
4 medical condition over time. *Id.* Plaintiff further argues that "inconsistent" reports of side
5 effects are the result of adjustments in medication. *Id.*

6    The Court agrees with Plaintiff.  The record reflects that over time Plaintiff's
7 medications and dosages were often changed and that Plaintiff had reported adverse side
8 effects to physicians in the past.  Tr. 147, 160, 161, 162, 223, 227, 239, 242, 254, 258, 259.
9 The Court finds that it is not inconsistent for Plaintiff to report adverse side effects
10 intermittently given her changing drug regimen, and that the ALJ failed to meet his burden
11 because his conclusion was not backed by substantial evidence.  Further, the ALJ failed to
12 give specific or legitimate reasons for concluding why Plaintiff's reports of increased
13 migraines are inconsistent, given her changing medical condition.  Last, the ALJ failed to
14 explain why a weight fluctuation of approximately twenty pounds over the course of one and
15 one-half years is inconsistent or how this fact relates to Plaintiff's credibility.  The ALJ
16 concluded that Plaintiff's reported weight loss merely offset a previously reported weight
17 gain, but did so without any finding concerning Plaintiff's normal weight.  The Court
18 concludes that the ALJ erred by failing to give specific and legitimate reasons backed by
19 substantial evidence as to Plaintiff's purported inconsistent reporting.

20    Second, the ALJ states that Plaintiff is not credible because "there is no evidence of
21 treatment for headaches after January 2004" and that "[i]f the claimant continued to
22 experience disabling headaches it would be reasonable to expect her to seek regular treatment
23 and report those symptoms to treating medical professionals." Tr. 31.  The ALJ opines that
24 Plaintiff cannot be disabled if her pain is alleviated by medication. *Id.* Plaintiff argues that
25 her treatment options have been exhausted and that her headaches persist despite treatment.
26 Doc. #10

27    If a plaintiff fails to seek treatment or to follow a prescribed course of treatment, the
28 ALJ may use this as evidence to discredit an allegation of excess pain. *See Fair v. Bowen*,

1    885 F.2d 597, 603 (9th Cir. 1989). Moreover, evidence of the efficacy of treatment may be
2    a reasonable ground for impeachment. *See Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir.
3    1995) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991)).

4    The record reflects, however, that one of Plaintiff's treating physicians, neurologist
5    Dr. Patel, reported that Plaintiff's migraines were "intractable" and that no relief was
6    available. Tr. 226, 247. Only the medication Imitrex, taken at maximum frequency,
7    provided relief. In addition to Imitrex, Dr. Patel added other pain medication such as
8    Depakote, Elavil, and Exedrin to Plaintiff's drug regime. Dr. Patel noted in January 2004
9    that Plaintiff was taking the maximum amount of Depakote tablets allowable by her
10   insurance to alleviate her headache pain. Tr. 258.

11   The record shows that Plaintiff's medications were not working. The fact that
12   Plaintiff remained on the maximum permissible dosage of Imitrex and Depakote makes it
13   difficult to conclude that Plaintiff should have done more to obtain relief. Tr. 242, 251.
14   Since Plaintiff did not fail to seek treatment or fail to follow a prescribed course of treatment,
15   and evidence shows that treatment was not effective, it was error for the ALJ to impeach
16   Plaintiff on this ground.

17   Third, the ALJ states that Plaintiff is not credible because there was no evidence of
18   treatment for chronic pain syndrome using acupuncture, chiropractic, biofeedback, a
19   transcutaneous electrical nerve stimulator or other such techniques. Tr. 31. The Court finds
20   that Plaintiff's failure to take advantage of treatment options that were not prescribed by her
21   physicians does not reflect poorly on her credibility.

22   Fourth, the ALJ states that Plaintiff's complaints are overstated because her long
23   history of migraines indicates that they were not so painful as to preclude her from work.
24   But the ALJ fails to acknowledge that Plaintiff's headaches worsened after her surgery and,
25   according to her doctor, became intractable. Tr. 196, 204-219. A progressively worsening
26   medical condition is not inconsistent or incredible.

27   Fifth, the ALJ states that Plaintiff's daily activities as reported on "Activities of Daily
28   Living" questionnaires belie her claims of excess pain. In addressing self-reports of home

1 activity, the Ninth Circuit has long stated that "the mere fact that a plaintiff has carried on 2 certain daily activities . . . does not in any way detract from her credibility as to her overall 3 disability. One does not need to be 'utterly incapacitated' in order to be disabled." *Benecke* 4 *v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) (citations omitted). In addition, any home 5 activity the ALJ wishes to point to as evidence against a finding of disability must constitute 6 a *substantial* portion of plaintiff's day and be transferrable to the "more grueling environment 7 of the workplace." *Regennitter v. Comm'r of the Soc. Sec. Admin.*, 166 F.3d 1294, 1297 (9th 8 Cir. 1998) (citations omitted); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001).

9       The ALJ states that "the claimant has reported that she is able to care for her personal 10 needs and at times prepare meals and shop. In addition, she reported that she had visitors and 11 got along well with people. Plaintiff argues that the ALJ has misconstrued the contents of 12 the questionnaires and taken her statements out of context. The Court agrees.

13       The record shows that what Plaintiff actually reported was: "I was the cook of the 14 family but my condition doesn't allow to cook [sic], but I try to help if I can," and "I do not 15 visit people much anymore but they still visit me, but other activities such as reading, 16 working, cooking, walking and cleaning has stopped due to this problem [sic]." Tr. 126. In 17 response to the question "Do you do any shopping," Plaintiff wrote "[o]nce in a while to just 18 get out of the house with the help of my husband or daughter [sic]." *Id.* The fact that 19 Plaintiff is able to go shopping periodically with assistance, occasionally help prepare meals, 20 and receive visitors from time to time does not indicate that she is not disabled or is 21 overstating her pain. *See Vertigan*, 260 F.3d at 1049-50 (9th Cir. 2001) ("[t]he mere fact that 22 a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or 23 limited walking for exercise, does not in any way detract from her credibility as to her overall 24 disability"); *Benecke*, 379 F.3d at 592, 594 (plaintiff's ability to take college courses, drive, 25 and perform limited errands did not impact finding of disability); *Moore v. Comm'r of Soc.* 26 *Sec. Admin.*, 278 F.3d 920, 925 n.2 (9th Cir. 2002) (plaintiff's testimony could not be 27 discredited simply because he was able to complete basic activities of daily living such as 28 watching television and performing odd jobs).

1       Furthermore, the ALJ did not make a finding that Plaintiff's ability to perform these
2  limited activities would transfer to the workplace, or that Plaintiff performed the activities
3  for a substantial portion of the day. *See Vertigan*, 260 F.3d at 1050 (activities such as
4  walking in the mall and swimming are not necessarily transferrable to the work setting); *Fair*
5  *v. Bowen,* 885 F.2d 597, 603 (requiring a specific finding of fact as to transferability of daily
6  activities to the workplace). The Court therefore concludes that the ALJ's characterization
7  of Plaintiff's report of daily activities does not constitute substantial evidence that Plaintiff
8  is not disabled or that she lacks credibility.

9       Sixth, the ALJ concludes that Plaintiff did not report headaches on her initial
10 application for benefits. Tr. 30. Plaintiff first reported migraines on an Activities of Daily
11 Living questionnaire that is mailed to every applicant after they file for benefits. Tr. 125.
12 Plaintiff filled out and returned the form approximately one month after her initial filing date.
13 Plaintiff notes that the initial application for benefits was not filled out by Plaintiff herself,
14 but rather by a social security representative after an oral interview. Doc. #22. The ALJ and
15 this Court do not know what questions were asked by the representative or why migraines
16 were not reported by the representative on the initial form. *Id.* It is clear, however, that the
17 first report filled out by Plaintiff's own hand did reference migraines and was returned within
18 a reasonable time. *Id.* Given these circumstances, the Court cannot conclude that the
19 absence of a migraine reference on the initial application supports the ALJ's credibility
20 determination. "We cannot affirm the examiner's conclusion simply by isolating a specific
21 quantum of supporting evidence." *See Gallant v. Heckler*, 753 F.2d 1450, 1455 (9th Cir.
22 1984) (*quoting Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975)).

23      In light of the fact that there are no conflicts in the record and that the evidence
24 overwhelmingly favors Plaintiff, the Court concludes that the ALJ erred in discrediting
25 Plaintiff's report of symptoms.

26              **b.    Rejection of Dr. Bryan's Testimony**

27      To reject the opinion of an examining physician, even if that opinion is contradicted
28 by another physician, the ALJ must set forth "specific and legitimate reasons that are

- 8 -

1  supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996); *see Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1298-99 (9th Cir. 1999). "'The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)). An ALJ may not rely on disbelief of Plaintiff's symptoms in discounting opinions of treating physicians, particularly where the disease is necessarily self-reported. *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) (*quoting Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2nd Cir. 2003).

The ALJ rejected Dr. Bryan's testimony in part because he believed that Dr. Bryan had relied on Plaintiff's subjective report of symptoms. Since the ALJ found Plaintiff not credible, he consequently found Dr. Bryan's opinion unreliable. Plaintiff argues that there is no evidence that Dr. Bryan did not base his assessment of Plaintiff's disability on clinical findings and that evidence in the record supports his conclusions. Doc. #22. Plaintiff further argues that since Dr. Bryan has repeatedly treated Plaintiff, his opinion is entitled to weight by the ALJ. *Id.* The Court notes that the record shows a long history of migraines and that none of Plaintiff's treating physicians nor the medical expert deny that Plaintiff suffers from migraines.

It is not error for a physician to take a patient's complaint at face value where there is no reason to suspect the patient is malingering or deceptive. *Regennitter*, 166 F.3d at 1300. A treating physician's opinion is given greater weight because "he is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (citations omitted). As described at length above, the ALJ did not have specific and legitimate reasons backed by substantial evidence to discount Plaintiff's credibility. There is no evidence in the record that Plaintiff is malingering, nor has she been accused of being deceptive by any of her treating physicians or the testifying medical expert. The ALJ's rejection of Dr. Bryan's testimony because the ALJ found Plaintiff not credible constitutes legal error. Given

1 Plaintiff's long history of migraines and the lack of contradictory evidence, Dr. Bryan was
2 justified in relying on her report of symptoms. The ALJ is in error because he is "effectively
3 requiring 'objective evidence' for a disease that eludes such measurement." *Benecke*, 379
4 F.3d at 594.

5 The ALJ also discounted Dr. Bryan's testimony because it was unclear whether Dr.
6 Bryan knew the meaning of "disabled" as defined by the social security act and regulations,
7 and because Dr. Bryan might have been referring to Plaintiff's ability to perform past work.
8 Since physician opinions are given substantial weight in a social security hearing, if the ALJ
9 is unsure about a treating physician's opinion, he is required to make "every reasonable
10 effort" to recontact the physician if the basis for his opinion is unclear. SSR 95-6p. The ALJ
11 was unsure what kind of work Dr. Bryan was referring to when he stated that Plaintiff was
12 disabled, and was therefore required to make "every reasonable effort" to contact Dr. Bryan
13 for clarification. There is no evidence that the ALJ did so, and the Court concludes that this
14 constitutes legal error.

15 **2.     Jayantibhai M. Patel, M.D.**

16 Dr. Patel, a neurologist who treated Plaintiff for migraines from July 29, 2003 until
17 at least July 14, 2004, reported that Plaintiff's vision problems and migraines rendered her
18 unable to work. Tr. 197. Moreover, Dr. Patel completed two Medical Source Statements of
19 Ability to do Work-Related Activities (Physical) ("MSSA") that state that Plaintiff's
20 symptoms restrict her from performing certain activities. Tr. 225, 226, 247, 248.

21 The ALJ rejected Dr. Patel's opinion on several grounds. The Court will address
22 each.

23 First, the ALJ rejected Dr. Patel's opinion because it conflicts with both the opinion
24 of another of Plaintiff's treating physicians, Dr. Lugo, and the opinion of the medical expert
25 who testified at trial. Tr. 32. Dr. Lugo and the medical expert, Dr. Goren, opined that
26 Plaintiff is still able to work, although each stated that her duties should be restricted. Tr. 32-
27 33. The ALJ also found that there is a conflict between Dr. Bryan's note releasing Plaintiff
28 back to work two weeks after surgery and Dr. Patel's opinion that Plaintiff is incapacitated.

- 10 -

1  Tr.32. Plaintiff argues that Dr. Patel's opinion is supported by the record as a whole and that
2  it is consistent with the opinion of Dr. Lugo, who assessed a light residual functional capacity
3  in Plaintiff.  Doc. #10.

4  If a treating physician's opinion is contradicted by another physician, an ALJ may
5  reject it if he sets out specific and legitimate reasons supported by substantial evidence in the
6  record. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (citing *Murray v. Heckler*, 722
7  F.2d 499, 502 (9th Cir. 1983).  However, "[t]he opinion of a nonexamining physician cannot
8  by itself constitute substantial evidence that justifies the rejection of the opinion of . . . a
9  treating physician." *Lester*, 81 F.3d at 831 (citations omitted).

10  The Court finds no conflict between Dr. Bryan's note and Dr. Patel's opinion because
11  the record reflects that Dr. Bryan placed Plaintiff back on a no work status just four work
12  days after the initial two weeks had expired.  Notably, Dr. Bryan extended Plaintiff's off
13  work status indefinitely at that point.

14  The Court does find, however, that the opinions of Dr. Lugo and Dr. Patel are
15  inconsistent.  Dr. Lugo concludes that Plaintiff's migraines and diminished eyesight do not
16  render her disabled, whereas Dr. Patel finds those ailments disabling.  Tr. 157-58, 247-48.
17  In order for the ALJ to credit one treating physician's opinion over another, he must set forth
18  specific and legitimate reasons supported by substantial evidence.

19  The ALJ failed to give specific and legitimate reasons for discounting Dr. Patel's
20  opinion when he merely stated that it conflicted with the opinions of Dr. Lugo and Dr. Goren,
21  the non-examining medical expert.  The ALJ must do more than state that a conflict exists;
22  he must give reasons why he chose one over the other.  The conflict serves only to lower the
23  burden on the ALJ from providing "clear and convincing" reasons to "specific and
24  legitimate" reasons. *See Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).

25  Second, the ALJ rejected Dr. Patel's overall assessment of Plaintiff's inability to
26  work, stating that it was conclusory.  Plaintiff argues that Dr. Patel's opinion is not
27  conclusory because he notes that Plaintiff suffers from migraines 25 times per month, that
28  they last three hours or more, and that they increase with stress and physical activity.

- 11 -

1 Doc. #22. An ALJ may disregard a treating physician's opinion as conclusory only if the
2 ALJ does more than offer his own conclusions. He must "set forth his own interpretations
3 and explain why they, rather than the doctors', are correct." *Regennitter*, 166 F.3d at 1299
4 (citing *Embry v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Here, the ALJ has not set
5 forth his own interpretations and gives no reasons backed by substantial evidence why his
6 own conclusion is correct and Dr. Patel's is not. Furthermore, as Plaintiff notes, Dr. Patel
7 did give reasons for his conclusion that Plaintiff was disabled and the Court finds that the
8 record supports his opinion.

9 Third, the ALJ rejected Dr. Patel's opinion because (1) "[t]he course of treatment
10 pursued by the doctor is inconsistent with what one would expect if the claimant were truly
11 experiencing headaches of the frequency and severity that Dr. Patel has reported" and (2)
12 "the claimant has reported that Imitrex helped her headaches on more than one occasion[,
13 which] suggests that the claimant's headaches were not severe." Tr. 32. These are
14 reiterations of the arguments regarding inconsistency, credibility, and efficacy of treatment
15 addressed above, and the Court need not address them again here.

16 For the reasons set forth above, the Court concludes that the ALJ erred by rejecting
17 the opinion of Dr. Patel. The Court need not address Plaintiff's other arguments, as the error
18 of the ALJ has already been clearly established.

19       **B.**    **Decision to Remand to Award Benefits or Develop the Record.**

20 Having decided to reverse the ALJ's decision, the Court has the discretion to remand
21 this case for the ALJ to further develop the record or to award benefits to Plaintiff. *Reddick*
22 *v. Chater*, 157 F.3d 715, 728 (9th Cir. 1998); *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th
23 Cir. 1989). The Ninth Circuit has provided guidance for the appropriate exercise of the
24 award of benefits discretion. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir.), *cert. denied*,
25 531 U.S. 1038 (2000). According to the Ninth Circuit, evidence should be credited and an
26 action remanded for the immediate award of benefits when the following three factors are
27 satisfied:

28       (1) the ALJ has failed to provide legally sufficient reasons for rejecting

> evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Id.* (quoting *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)).

Here, the government's vocational expert who testified at the hearing concluded that if Plaintiff's testimony were taken as true, she would be considered disabled as defined under the Social Security Act and regulations. Tr. 82. Since (1) the ALJ failed to give legally sufficient reasons for rejecting Plaintiff's testimony, (2) there are no issues that remain to be resolved, (3) Plaintiff would be considered disabled if her testimony is taken as true, and (4) the testimony of the two treating physicians whose opinions were improperly discredited by the ALJ corroborate Plaintiff's testimony, a remand for payment of benefits is appropriate in this case. *See Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004) (remand for award of benefits appropriate where taking plaintiff's pain testimony as true combined with vocational expert testimony established disability); *Reddick v. Chater*, 157 F.3d 715, 729 (9th Cir. 1998) (same); *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989) (same).

### III. Motion to Amend Complaint.

Plaintiff has filed a motion to amend her complaint to change the period in dispute. Doc. #29. Plaintiff filed a new application for benefits on January 14, 2005, the day after the ALJ's decision was issued. The Social Security Administration subsequently found Plaintiff disabled as of January 14, 2005. Plaintiff's motion seeks to amend the complaint to limit the period in dispute in the present case to March 1, 2003, the date Plaintiff's disability began, through January 13, 2005, the date of the ALJ's decision.[1] Plaintiff argues that the complaint should be amended to avoid the perception that the Court is re-opening the Plaintiff's subsequent favorable determination. Defendant argues that the period in dispute is the same.

---

[1] The Court notes that Plaintiff's Amended Complaint, Doc. #25, contains a typographical error on page two, stating that the complaint is limited to the period between March 1, 2003 and January 30, 2005. The record should reflect that the motion to amend complaint is granted to reflect a period in dispute between March 1, 2003 and January 13, 2005.

- 13 -

1  The Court finds that in the interest of clarity, the motion should be granted to prevent
2  possible confusion regarding overlap between the cases.  The Court notes that it is not re-
3  opening the Plaintiff's subsequent favorable determination.

4  **IT IS ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. #8) is
5  **granted**.

6  **IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment
7  (Doc. #16) is **denied**.

8  **IT IS FURTHER ORDERED** that Plaintiff's Motion to Amend Complaint (Doc.
9  #29) is **granted**.

10  **IT IS FURTHER ORDERED** directing the Clerk to enter Judgment and **remand**
11  this matter to the ALJ for further proceedings consistent with this Order.

12  DATED this 21st day of July, 2006.

*/s/ Daniel G. Campbell*
David G. Campbell
United States District Judge

- 14 -